313-046-E, Stephen M. Smith, MD, appellant by Daniel O'Dea, with the Central Illinois Radiological Associates, affiliated by Argyle Film. Thank you. I'd like to point out that we have an empty seat up here. Justice Linton is the third member of the panel. He's ill today and is unable to be here, but he will be reviewing the arguments, taking part in any conferences and discussions on the case, and will be a full participant in making the decision. Mr. O'Dea, good morning. Good morning, Your Honor. May it please the Court, Counsel, with me is Daniel Anuska, a lawyer at our firm, and then also, if Your Honor will grant me this indulgence, we have an intern from Bradley University, Ryan Tank, who's been with us this spring, and I wanted to acknowledge his contributions to this process, and that's why we brought him today. Thank you. I represent Dr. Stephen Smith, who's a radiologist, and he was in a group of radiologists in Peoria, Central Illinois Radiological Associates, which everybody calls CIRA for short, C-I-R-A. And he started working at CIRA at least as early as 2000, when he entered into a written contract. The written contract that he entered into is part of the subject of the dispute in this case. It was Exhibit A to the complaint, and Exhibit B to the complaint was a memorandum that was entered into seven years later when he was starting to talk about his retirement. They held a shareholders meeting. The shareholders meeting that Exhibit B was the result of is acknowledged in the preamble language in Exhibit B. In Exhibit B then, thereafter, everything that's referred to thereafter is referred to as the agreement that all shareholders reached on December 15, 2009. So your honors decided a case called the McCarthy Trust Case back in 2011. Justice McDade, you were the third justice in that case. I think that what happened was Justices Carter and O'Brien held that, first of all, that in the case of antecedent writing followed by an ensuant writing, that you have to decide whether the ensuant writing modifies the prior agreement or not. And then if it does, then the second stage of the analysis is to decide, well, in what way does it change it? And in that case, Justice Carter, writing for the majority, said that he thought that the agreement modified the earlier agreement. And then also he thought that the second writing was, there was an ambiguity between the two writings, and he thought that you could resolve the ambiguity without requiring testimony, factual proof. You could just decide it based on the writings. Your honor, you filed a concurring opinion saying that you'd reach the same exact result as the other two, but you didn't think that it was ambiguous, and so you wouldn't even engage in the analysis finding how to resolve the ambiguity. So there was a two-stage analysis in the McCarthy Trust Case. I think that everybody here agrees, provides the framework between the two opinions in that case. The framework would go as follows. Number one, does the ensuant agreement, Exhibit B, modify Exhibit A in the end? If the answer to that is yes, and I think that we're actually on the same wavelength on that, that both sides agree that it modifies it. Where we have a disagreement is, I think they contend that Exhibit B is not ambiguous, and that it should be decided in their favor on a 2619 motion that the language about retirement in Paragraph 3 of Exhibit B does not modify the termination without cause language in the second sentence of Section 2.1 of Exhibit A. I think that our position on that is that the agreement is not ambiguous, that the second agreement here says that he will retire effective January 2013 or January 2014, but our urging is a different result than their urging if it's not ambiguous. Our urging is that that means that he will retire then, and that it's plain as day and there's nothing to interpret. But we also differ, I think, from our opponents under the McCarthy Trust analysis about what happens if there is an ambiguity that needs to be decided. We think that would create an issue of fact that maybe the shareholders at the shareholders meeting or the party's intentions would come in to feed, and that therefore that would make it wrong to have decided on a 2619 motion to dismiss. Under the McCarthy Trust analysis, the first peg, clearly Exhibit B made changes to Exhibit A. For example, under Exhibit A, there were certain payment requirements and all that that were changed in Exhibit B. Exhibit A required what the doctors called full-time devotion to the practice. In Exhibit B, Dr. Smith was going to get six or eight more weeks of vacation than he had gotten before and so on. Clearly, this changes the agreement. Number two, under the Richard McCarthy Trust case, we have to ask the question, well, I guess, did Paragraph 3 change the agreement? And if it did, how did it change it? Their contention, I think, is that this was a mandatory retirement provision that wasn't in Exhibit A, and that's the only change that it made. Our contention is that it doesn't say mandatory retirement provision, first of all. It says that all the shareholders agreed in the preamble language and then that Dr. Smith and Dr. Young agreed that they will retire effective January 2013 or January 2014 and that they wouldn't work in that capacity beyond January 2014. That's not going to be possible to achieve now because January 2013 and January 2014 have come and gone. And here we are in May of 2014 and Dr. Smith never got to retire, as this said, because they sent out Exhibit C to the complaint. The complaint being a notice of termination under the second sentence of Section 2.1 of Exhibit A. And in this notice of termination that they sent out on December 2, 2011, they said that they were terminating the contract without cause. And I think it's important to realize that when they're saying without cause, in many of the cases that are cited in the briefs, like the Klein case, the Kasich case, and other cases, there's a dispute about whether the employee who's referred to in the contract as going to retire or retiring or entitled to retire and so on, whether that person somehow wasn't performing the contract and could be terminated for cause. In one case, they said that the employee was no longer a key employee because he had botched some kind of a sale. In another case, that he wasn't being a good general manager anymore because he wasn't keeping them abreast of what was going on after a sale to Brunswick of a bowling alley concern and so on and so forth. But in this case, there's no contention that there was a termination for cause here or any basis to terminate for cause. So we're strictly talking about a termination without cause, and that's what Exhibit C refers to as termination without cause. It's our position that a retirement is a termination without cause. It's something that when you reach the stature that Dr. Smith obviously had reached along with Dr. Young under Exhibit B where they're talking about, well, what are we going to do before your retirement? We're going to give you more vacation. We're not going to pay you as much, and then you're going to retire in January of 2013 or January of 2014. That is all on the topic of the term of the agreement and all on the topic of a termination without cause. And because the termination without cause that's purported to be set forth in Exhibit C to the complaint, which is a C31 in the record, because that purported termination precludes performance of the scheduled termination without cause in the form of a retirement that's in Exhibit B, that is sort of the proof of the pudding that the reference to retirement in Exhibit B changed Exhibit A because you couldn't have both anymore. You had to have the retirement taking place as scheduled in Exhibit B, or you could still have, I suppose, a termination for cause as in these cases that have been cited in the briefs if something like that could be proven, but nothing like that is involved in our case. The one thing about the McCarthy trust case that I think is important is if you look at pages 535 to 536 of the court's decision, even starting on page 534, there's a sentence on page 534 of the opinion that says that when a modification is inconsistent with a term of a prior contract between the same parties, the modification is interpreted as including an agreement to rescind the inconsistent term in the prior contract. And then on page 535, it says that the court has to consider the contract as a whole without zeroing in on any provision in particular in deciding how the change was made. In this case, I think that Judge Dubicki's mistake when he ruled that he was going to grant the 2619 motion of the defense was that he was applying a rule that makes a lot of sense in the context of one document that's created at one time where the law says you've got to try to give effect to all of the terms in that document and reconcile them with one another within the four corners of the instrument. But where you've got an ensuant agreement like Exhibit B following a prior agreement like Exhibit A, you no longer have four corners, you've got eight corners now. And it would seem to me that the later of the two documents is going to control and you don't need to reconcile them so much anymore because the parties didn't create them at the same time. Back in 2000, maybe if Exhibit A was all we had, you would be wanting to reconcile everything in that instrument, but where seven years later when a retirement is being planned and Exhibit B is created, the parties aren't interested in keeping everything reconciled or together with Exhibit A at that time. In fact, they're changing Exhibit A and they're planning for a retirement. So I believe that that was just Kubicki's mistake and I think that under the applicable case law that his decision should be reversed for two reasons. Number one, the agreement makes it as plain as could be that the retirement dates would be January 13 or January of 2014. And also, if there is any issue of fact on this, if these terms are ambiguous at all, it's an issue of fact that should be resolved. In fact, I think that both the, I don't know if it's accurate to refer to it as the majority, but the two-judge opinion in McCarthy, they said, Justice Carter said, that it's a unique circumstance indeed that you can regard a decision about an ambiguity as something that can be decided within the instrument itself, but he thought in that case that unique circumstance was present. And I think that this is not that kind of a unique circumstance if there is an ambiguity, because there would be plenty of fact involved on what the parties intend when they held that shareholders meeting where everybody agreed to this. Thank you. Thank you, Mr. O'Day. Mr. Keene? Keene, Your Honor. Good morning. Good morning, Your Honor. May it please the Court. Mr. O'Day. Your Honor, CIRA sent Dr. Smith a letter. It was on December 5th of 2011, and that's the letter that terminated his employment without cause. The relevant portion of the contract, as Mr. O'Day discussed, is Section 2.1. CIRA actually gives both parties the right to terminate the contract without cause. And CIRA followed the very clear and very specific requirements in 2.1 for terminating this agreement without cause. Sent the letter certified mail, return receipt requested. That's what 2.1 said to do. Sent it 180 days in advance also, because that's what 2.1 said CIRA needed to do. There's no dispute about any of that. And that brings up the Klein decision in my mind as a case that's actually instructive here. In Klein, you had kind of a similar situation where there was an original agreement, it was an at-will employment agreement, followed by a later one that established a definite term of employment. And the question in Klein, you know, it involved the modification, but one thing that the Klein court noted I think is instructive here. The court there said that it agreed Klein could have been terminated during the term of the contract. The salient question is whether Caremark, the employer, followed the procedure set forth in the agreement for doing so. That's what happened here. In Klein, the employer didn't follow that procedure. Here CIRA did, and there's no dispute about that. The only question here in this appeal, Your Honors, is whether this memorandum that was called additional vacation time eliminated CIRA's right to terminate Dr. Smith's employment without cause. Is it correct that you are not saying that this agreement is separate and not part of the Exhibit A? It is definitely a different document executed at a different time. Certainly once it was prepared, it memorialized a new agreement. That included terms from both. There's no dispute there, yes. Let's focus on that memorandum for a minute, the one in December of 2009. It talked about how much vacation Dr. Smith was going to take. He wanted to work a little less. He was going to get paid a little less. No surprise there. It also says this, Dr. Smith and then Dr. Young, one of his partners at the time, agreed that they will retire effective January 2013 or January 2014. Neither Dr. Smith nor Dr. Young will work in this capacity beyond January 2014. There's nothing in there about terminating the employment agreement without cause. It doesn't discuss it. It doesn't refer to Section 2.1. It actually doesn't refer to the employment agreement at all. Doesn't it actually avoid termination without cause if he started working part-time? It just allows him to work part-time and not risk being terminated. I'm sorry, I don't understand the court's question. Okay. The new agreement, he was required to work full-time, and it was renewable year-to-year, correct? That is true. Now the new agreement says you don't have to work full-time. In fact, you're going to get more vacation. If you don't show up full-time, you won't be terminated. It's okay. To me, it provides an end date. It certainly provides an end date. But what it doesn't do is talk about terminating without cause. I think what the court is getting at is terminating perhaps with cause in some sense for one particular cause. Yes, yes, for not showing up. Not showing up. And if I misstated it, I apologize. And certainly he wouldn't have been terminated if he didn't work the same number of hours. He had been working before. Correct. No doubt about that. But what it didn't do was affect the right of CIRA to terminate this without cause, and that's the termination we have here. Mr. King, before we move on, I'd like to ask about Paragraph 4 in that 2009 agreement. Sure, Joan. It says this arrangement will be reviewed on a quarterly basis. If the MRG shareholders decide that it is in the best interest of the division that Dr. Smith and Dr. Young discontinue this part-time effort, Dr. Smith and Dr. Young will return to work full-time. That's the only provision allowing for review that I could see in here. So it sounds as though this was a permanent sort of arrangement that would only be reviewed on one basis, and that was whether the extended period of vacation would be in the best interest of the Radiological Agency Association. I would say that that's what the parties would review on an ongoing basis, but I guess I'm confused if the Court is likening that to whether CIRA could terminate without cause in that interim period. That's what I'm questioning, is whether by limiting the type of review that can be done on this new arrangement, you're committing to leaving them in place until those retirement dates. No, Your Honor. I wouldn't read it that way at all. Again, I think this memorandum deals with a couple of different things. One of the things was the number of hours Dr. Smith would work and the amount of compensation he would receive. That's what Paragraph 4 is getting at here. Not at the point at which CIRA could terminate his employment in the meantime. It just doesn't discuss it. Certainly, the parties could review the part-time nature of his employment in the meantime, and the part-time nature of his employment certainly was changed from his prior agreement. That's what we're dealing with, in fact, in Counts 2 and 3, which are still pending. What were the modifications to his workload? The employment agreement said full-time. This says part-time. There was a change there. Those provisions, though, the full-time employment provision in his employment agreement, has nothing to do with CIRA's right to terminate the employment agreement without cause. There are different provisions. They just don't relate to each other. Okay. Now, I would read that differently, so I guess I would say that it was ambiguous, because it seems to me that you've precluded yourself from doing anything other than letting them retire at the period of retirement that's set here. In what way, Your Honor, if I might ask? Because you have not reserved any form of review from this termination by retirement. It's in the employment agreement, which sort of gets back to the question, what changed in the employment agreement? And Judge Dubecki thought this made a mandatory retirement provision. I don't think the court needs to go that far. So the question is, did this review provision eliminate pretty much completely the party's ability to end this agreement before Dr. Smith's retirement? And I just don't see that it gets there. I mean, you can review one part of a contract without talking at all about another. I think there are two other points that get us to that result, Your Honor. One is the words I think we're talking about here primarily are retire and terminate, very different words with very different meanings. Certainly, a retirement is a termination of the employment relationship, but not all terminations happen when someone retires. There are a variety of reasons someone terminates employment. It could be terminated for cause. It could be terminated without cause, like Dr. Smith was here. But these are different from the commonly understood definition of the word retire. Retire is what the memorandum says. The word terminate is not in there. They don't specifically say, CIRA no longer has the right to terminate Dr. Smith's employment without cause. The words aren't ambiguous. We all understand what those words mean, and there's no need to resort to extrinsic evidence. Same thing the court found in the McCarthy case. The other problem with Dr. Smith's reading of this and why CIRA does not believe there's any ambiguity is the results that follow. And perhaps the most absurd of those is that CIRA couldn't terminate his employment without cause. I mean, if we'll retire means Smith can't leave for any reason until he retires. He could be in prison. He could lose his license to practice medicine. But CIRA would have to continue employing him and paying him under this agreement. And Dr. Smith acknowledges this on page 15 of his brief in this appeal. He writes that CIRA was free to do so, that is to terminate with cause, but does so in reach of the employment agreement. That can't be right. He's suggesting that CIRA should have administered this agreement by breaching it. But that's not how parties act under a contract. It's an absurd result. And it has to follow from the way he asks this court to read Will Retire. It can't mean what he says it means. Frankly, it doesn't matter what the parties actually intended here, as long as the court finds what they didn't intend. And the court may find in this de novo review, may affirm on any basis, it can find, it should find, that Will Retire does not mean that's the only way out. That he can't leave. In his words, he had the duty to work. He couldn't leave voluntarily. And CIRA couldn't get rid of him for any reason. There's no ambiguity in the terms retire and terminate. And the results, the absurd results that follow from Dr. Smith's interpretation of this phrase, Will Retire, mean that it simply can't be, that can't be the result. You say that Dr. Smith's position is that he can't be fired for cause? Yes, ma'am. And that that's on page 15? Page 15 of his brief, yes. I can be more specific with the court here in just a moment. He writes here near the end of the page, nor does Dr. Smith claim that he is absolutely immune from termination. Well, that is what he's saying. Prior to 2013 or 2014, on the contrary, CIRA is free to do so, terminate with cause, but does so in breach of the employment agreement. It has. Again, that can't be right. That result can't follow here. So whatever the parties intended, they did not intend to limit CIRA's right to end Dr. Smith's employment before one of these retirement dates. Whatever else they might mean, we know they don't mean that. I'm happy to answer any of the questions the panel has. Thank you, Your Honor. Thank you, Mr. King. Mr. O'Day? On page C18 in the record is this paragraph 2.1 that we've been talking about. The first sentence of that says, the term of this agreement shall commence on the effective date, shall continue, shall automatically be renewed, etc., etc. The cases that we've cited show that that takes it out of the at-will doctrine when you've got a specific term like that, and therefore it is, in fact, a contract that has a duration. We think that the duration, though, changes in Exhibit B to a duration that lasts until the retirement dates. We cited also in our brief the Lukasik case. In the Lukasik v. Riddle case back in 1983, the Illinois Appellate Court dealt with a situation where Mr. Lukasik had a contract that said that he may retire at age 65, and he contended that those words, may retire, created a situation where they had to keep him employed until his retirement date. At that time, the Illinois Appellate Court disagreed with him about that because of the word may being used. The Appellate Court said that the provision does not say the employee must retire when he is 65, so it does not purport to limit the period of employment. May does not mean shall, and is not so construed in private contracts. Accordingly, plaintiff has not carried his burden of proving the existence of an agreement to employ him for a definite period. That's at page... It's so hard to find these page numbers sometimes. The northeast site would be at age 59. The northeast second site. But here, the words are will retire, not may retire. And so for the very reason that the Illinois Appellate Court said that Mr. Lukasik did not have employment guaranteed through age 65, Dr. Smith did because it says will retire. And we point out a number of cases in our brief about where will and shall are mandatory words, not words that are optional, and that's also recognized in the Lukasik case. On page 15 of our first brief, we did not mean to suggest that he couldn't be terminated for cause. In fact, if you read the sentence before, the ones that were just being talked about, we say for cause termination is always an option for Illinois employers. And I don't know how we could have been more clear about that, but if you are harming patients and you're a doctor and you work for somebody, you should be able to be terminated no matter what. And I don't think that language about a without cause termination, which is a retirement, precludes that. And, in fact, in the cases that have been cited, such as the Lukasik case itself, in Lukasik there was a second issue. Even though he wasn't guaranteed employment through age 65, if they fired him before 65, he was still entitled to retirement benefits at age 65 unless they fired him for cause. So they tested whether he was fired for cause. In the Kress case, Kress v. Recreation Services, they still tested, even though they found a term of employment based on the language of the contract, they still tested whether he had breached the contract by not being able to be capable of performing his duties as a general manager. And in the Klein case, where the court said that a later agreement trumped an earlier one, they still went ahead and tested whether he was still to be considered a key employee when he had supposedly botched a presentation to a big customer and everything. So we've never said that you can't have a termination for a cause. We're just saying this one wasn't for cause. There was no problem with Dr. Smith's performance. They just thought that they found a way to pay him less money. In fact, in Exhibit C, which is the purported termination agreement, they tell him that he's still got to stick around during the six-month period of notice for the supposedly without cause termination. And if you look at Exhibit D, pretty close to the end of it, they tell him that he should go on vacation when he's only got a few weeks left of the notice period. And he never even gets the 20 weeks vacation that he's entitled to because they use up so much of the notice period saying he's got to stick around. So anyway, they breached the contract several ways that are still pending, but they also breached it by ending it in such a way that it doesn't perform the language he will retire in January of 2013 or January of 2014. Thank you. Any other questions? Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for panel time.